UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN DIVISION
No. 2:16-CV-74-D

| | |
|---|---|
| KISHA NICOLE WHITE,<br><br>Plaintiff/Claimant,<br><br>v.<br><br>NANCY A. BERRYHILL, Acting<br>Commissioner of Social Security,<br><br>Defendant. | MEMORANDUM AND<br>RECOMMENDATION |

This matter is before the court on the parties' cross-motions for judgment on the pleadings [DE-19, -21] pursuant to Fed. R. Civ. P. 12(c). Claimant Kisha Nicole White ("Claimant") filed this action pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3) seeking judicial review of the denial of her applications for a period of disability, Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") payments. The time for filing responsive briefs has expired, and the pending motions are ripe for adjudication. Having carefully reviewed the administrative record and the motions and memoranda submitted by the parties, it is recommended that Claimant's Motion for Judgment on the Pleadings be allowed, Defendant's Motion for Judgment on the Pleadings be denied, and the case be remanded to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

## I. STATEMENT OF THE CASE

Claimant protectively filed applications for a period of disability, DIB, and SSI on May 6, 2013, alleging disability beginning August 15, 2012. (R. 26). Both claims were denied initially and upon reconsideration. (R. 114–57). A hearing before the Administrative Law Judge ("ALJ") was held on April 29, 2015, at which Claimant was represented by counsel, and a vocational

expert ("VE") appeared and testified. (R. 44–83). On May 15, 2015, the ALJ issued a decision denying Claimant's request for benefits. (R. 23–43). On August 18, 2016, the Appeals Council denied Claimant's request for review. (R. 1–6). Claimant then filed a complaint in this court seeking review of the now-final administrative decision.

## II. STANDARD OF REVIEW

The scope of judicial review of a final agency decision regarding disability benefits under the Social Security Act ("Act"), 42 U.S.C. § 301 *et seq.*, is limited to determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . . ." 42 U.S.C. § 405(g). Substantial evidence is "evidence which a reasoning mind would accept as sufficient to support a particular conclusion." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). While substantial evidence is not a "large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988), it is "more than a mere scintilla . . . and somewhat less than a preponderance." *Laws*, 368 F.2d at 642. "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings and rationale in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

## III. DISABILITY EVALUATION PROCESS

The disability determination is based on a five-step sequential evaluation process as set forth in 20 C.F.R. §§ 404.1520, 416.920 under which the ALJ is to evaluate a claim:

> The claimant (1) must not be engaged in "substantial gainful activity," i.e., currently working; and (2) must have a "severe" impairment that (3) meets or exceeds [in severity] the "listings" of specified impairments, or is otherwise incapacitating to the extent that the claimant does not possess the residual functional capacity to (4) perform . . . past work or (5) any other work.

*Albright v. Comm'r of the SSA*, 174 F.3d 473, 475 n.2 (4th Cir. 1999). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden of proof and production during the first four steps of the inquiry rests on the claimant. *Id.* At the fifth step, the burden shifts to the ALJ to show that other work exists in the national economy which the claimant can perform. *Id.*

When assessing the severity of mental impairments, the ALJ must do so in accordance with the "special technique" described in 20 C.F.R. §§ 404.1520a(b)–(c) and 416.920a(b)–(c). This regulatory scheme identifies four broad functional areas in which the ALJ rates the degree of functional limitation resulting from a claimant's mental impairment(s): activities of daily living; social functioning; concentration, persistence or pace; and episodes of decompensation. *Id.* §§ 404.1520a(c)(3), 416.920a(c)(3). The ALJ is required to incorporate into his written decision pertinent findings and conclusions based on the "special technique." *Id.* §§ 404.1520a(e)(3), 416.920a(e)(3).

In this case, Claimant alleges the following errors by the ALJ: (1) failure to find that Claimant's degenerative disc disease of the lumbar spine met Listing 1.04; (2) failure to find that the medical source statement and opinions contained therein were entitled to great weight; (3)

3

improper assessment of Claimant's residual functional capacity ("RFC"); (4) failure to properly assess Claimant's symptoms and credibility; (5) failure to accurately set forth all of Claimant's physical and mental limitations in the hypothetical posed to the VE; and (6) failure to find Claimant disabled as a result of her mental and physical impairments. Pl.'s Mem. [DE-20] at 7–8.

## IV. ALJ'S FINDINGS

Applying the above-described sequential evaluation process, the ALJ found Claimant "not disabled" as defined in the Act. At step one, the ALJ found Claimant had not engaged in substantial gainful employment since the alleged onset date. (R. 28). Next, the ALJ determined Claimant had the following severe impairments: diabetes mellitus; diabetic neuropathy; degenerative disc disease; and obesity. *Id.* However, at step three, the ALJ concluded these impairments were not severe enough, either individually or in combination, to meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. 29).

Prior to proceeding to step four, the ALJ assessed Claimant's RFC, finding Claimant had the ability to perform light work[1] with postural and environmental restrictions as follows:

> The claimant can sit for 15 minutes at one time and then she needs to walk around for 15 minutes. She can sit for two hours total in an eight-hour workday. She can walk or stand for an hour at one time and for up to six hours total in an eight-hour workday. She can lift 20 pounds occasionally and she can lift 10 pounds frequently. She can occasionally stoop and crouch. She is not able to climb ladders, ropes, or scaffolds. She can occasionally climb ramps and stairs. She can have occasional exposure to hazards.

---

[1] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If an individual can perform light work, he or she can also perform sedentary work, unless there are additional limiting factors such as the loss of fine dexterity or the inability to sit for long periods of time. 20 C.F.R. §§ 404.1567(b), 416.967(b).

4

*Id.*

At step four, the ALJ concluded Claimant did not have the RFC to perform the requirements of her past relevant work as a certified nurse assistant and watch guard. (R. 35). Nonetheless, at step five, upon considering Claimant's age, education, work experience, and RFC, the ALJ determined there are jobs that exist in significant numbers in the national economy that Claimant can perform. (R. 36).

## V. DISCUSSION

### A. The ALJ's finding that Claimant's impairments did not meet Listing 1.04 is supported by substantial evidence.

The ALJ found that Claimant's impairments did not meet or equal Listing 1.04, the listing for disorders of the spine. (R. 29). Claimant contends that the ALJ erred by finding that her condition did not meet Listing 1.04, and that such finding is not supported by substantial evidence. Pl.'s Mem. [DE-20] at 23–24. The court disagrees that the ALJ's determination is unsupported by substantial evidence.

The listings consist of impairments, organized by major body systems, that are deemed sufficiently severe to prevent a person from doing any gainful activity. 20 C.F.R. §§ 404.1525(a), 416.925(a). Therefore, if a claimant's impairments meet or medically equal a listing, that fact alone establishes that the claimant is disabled. *Id.* §§ 404.1520(d), 416.920(d). An impairment meets a listing if it satisfies all the specified medical criteria. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); SSR 83-19, 1983 WL 31248, at *2 (Jan. 1, 1983). The burden of demonstrating that an impairment meets a listing rests on the claimant. *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

As indicated, even if an impairment does not meet the listing criteria, it may still satisfy the listing if the impairment medically equals the criteria. 20 C.F.R. §§ 404.1525(c)(5),

416.925(c)(5). To establish such medical equivalence, a claimant must present medical findings equal in severity to all the criteria for that listing. *Sullivan*, 493 U.S. at 531; 20 C.F.R. §§ 404.1526(a), 416.926(a) (medical findings must be at least equal in severity and duration to the listed criteria). "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Sullivan*, 493 U.S. at 531–32 (citing SSR 83-19) ("[I]t is incorrect to consider whether the listing is equaled on the basis of an assessment of *overall* functional impairment . . . . The functional consequences of the impairments . . . irrespective of their nature or extent, *cannot* justify a determination of equivalence").

To satisfy Listing 1.04A, a claimant must show a disorder of the spine "(e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equine) or the spinal cord" with: evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss *and*, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine). 20 C.F.R. § 404, Subpart P, App. 1, 1.04 (emphasis added).

In order for a claimant to demonstrate that an impairment meets Listing 1.04A, the claimant "need not show that each symptom was present at precisely the same time—i.e., simultaneously—in order to establish the chronic nature of his condition. *Radford v. Colvin*, 734 F.3d 288, 294 (4th Cir. 2013). "Nor need a claimant show that the symptoms were present in the claimant in particularly close proximity." *Id.* The Commissioner has recognized that, "abnormal physical findings may be intermittent," but a claimant may nonetheless prove a chronic condition

6

by showing that he experienced the symptoms "over a period of time," as evidenced by "a record of ongoing management and evaluation." *Radford*, 734 F.3d at 294 (quoting 20 C.F.R. Part 404, Subpart P, 1.00D). "To require proximity of findings would read a new requirement into the listing that is unsupported by the text, structure, medical practice, or common sense." *Id.*

At step three, the ALJ found that Claimant did not meet Listing 1.04 because she "does not have symptoms or signs of a nerve root compression syndrome, arachnoiditis, or lumbar stenosis as required for degenerative disc disease." (R. 29). Claimant contends that this finding is not substantially supported by the evidence. Pl.'s Mem. [DE-20] at 23. She posits that the medical evidence demonstrates that she has met all of the requirements of Listing 1.04A. *Id.*

In the RFC analysis, the ALJ discussed medical evidence related to each of Claimant's severe impairments. *See Smith v. Astrue*, 457 F. App'x 326, 328 (4th Cir. 2011) (holding that the court can consider the decision as a whole in determining whether or not the ALJ sufficiently articulated her reasoning with respect to Claimant's functionality in Step Three). With respect to her degenerative disc disease, the ALJ summarized evidence spanning from July 2012–April 2015. (R. 32–33). An MRI of Claimant's lumbosacral spine performed on August 21, 2012, at Urgent Care showed disc protrusion at the L4-L5 level and disc herniation at the L5-S1 level. (R. 32). On September 5, 2012, Claimant was seen by Dr. John Shutack, who noted that Claimant "had a full range of motion of the spine" and "pain on straight leg raising testing." *Id.* He reviewed her prior MRI and also diagnosed her with disc herniation and lumbar radiculitis. *Id.* Another MRI was performed on October 23, 2012, which similarly showed disc protrusion at the L4-L5 and L5-S1 levels as well as dextroscoliosis. (R. 32–33). On August 24, 2013, Claimant was seen by Dr. Gwendolyn Riddick, who observed "limitation of motion of the thoracolumbar spine," as well as "normal neurological findings and no impairment of gait." *Id.*

In December 2013, Claimant was seen by John Elliot, D.O. who noted "tenderness of the back muscles" and "pain on straight leg raising testing." *Id.* He also diagnosed her with lumbar radiculopathy and disc herniation. *Id.* Next, Claimant was examined by Dr. Jason Miller, who found "tenderness of the back muscles," "pain on motion of the spine," and "she had positive straight leg raising," but opined that "she had a full range of spinal motion," and her "muscle strength was normal." *Id.* An MRI of the lumbosacral spine performed on March 9, 2015, showed that Claimant had mild to moderate spondylosis at the L4-L5 and L5-S1 levels. *Id.* Lastly, Claimant was evaluated for her back pain by Dr. Kurt Voos on April 23, 2015. (R. 33). He noted "a scoliotic curve," but that "she did not have any tenderness of the back muscles," "she had a full range of motion of the spine and normal neurological findings," and "straight leg raising testing was negative." *Id.* An x-ray was performed and showed scoliosis and multi-level degenerative changes. *Id.* Dr. Voos diagnosed Claimant with degenerative thoralumbar scoliosis, disc protrusion at L4-L5 and L5-S1 levels, and lumbago. *Id.*

In the ALJ's discussion of Claimant's degenerative disc disease, the ALJ stated:

> The claimant has degenerative disc disease but she does not have persistent limitation of spinal motion or any signs of nerve root compression, which might be expected based on the degree of back pain alleged. She has declined surgical intervention and she has not required treatment in a pain management program. She testified at the hearing that the medications she was prescribed helped and that her pain was under control.

(R. 34).

Claimant cites additional evidence in the record to counter the ALJ's finding that Claimant did not have any signs of nerve root compression. Pl.'s Mem. [DE-20] at 24. Specifically, Claimant cites the following: an October 23, 2012 MRI, which showed broad central/right paracentral protrusion contacting the right S1 nerve root with posterior displacement, no definite impingement, and a correlation for right S1 radiculopathy; Dr.

8

Shutack's October 24, 2012 clinical impression stating low back pain and leg pain secondary to lumbar disc herniation; a March 9, 2015 MRI, which showed "At these 3 levels, paracentral disc extrusions contact the traversing L5 and S1 nerve roots . . . at the L5-S1 disc space, the disc material displaces the traversing right S1 nerve root;" and Dr. Miller's review of the MRI on March 10, 2015, finding paracentral disc extrusion at the L4-L5 and L5-S1 levels that contact the traversing nerve root. *Id.*

The evidence Claimant cites is also cited by the ALJ in her decision, albeit the Claimant includes more detail about the records than the ALJ included in her discussion. Claimant argues that the additional evidence demonstrates compression of the nerve root. The court disagrees. First, it is clear from the ALJ's decision that this evidence was considered, as all of the Claimant's cited evidence was discussed in the decision. Second, while the records indicate the existence of a spinal disorder related to Claimant's nerve roots, Listing 1.04A states that nerve root compression is evidenced by a showing of all of the enumerated symptoms—pain, limitation of spinal motion, motor loss/muscle weakness, sensory/reflex loss, and positive straight leg testing. 20 C.F.R. § 404, Subpart P, App. 1, 1.04. It is Claimant's burden to demonstrate that each of these symptoms are present. *Pass v. Chater*, 65 F.3d 1200, 1203 (4th Cir. 1995). While there is some evidence of pain, limitation of spinal motion, and positive straight leg testing, the record is devoid of any indication of "motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss." 20 C.F.R. § 404, Subpart P, App. 1, 1.04. Claimant's argument with respect to Listing 1.04A is limited only to the evidence stated above, contending that such evidence shows nerve root compression, without identifying evidence that demonstrates a showing of *all* of the enumerated symptoms. The court finds the ALJ sufficiently discussed the relevant medical evidence, and there is substantial evidence in the

9

record to support her determination that Claimant does not meet Listing 1.04A.

## B. Treating Physician Opinion

When assessing a claimant's RFC, the ALJ must consider the opinion evidence. 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3). Regardless of the source, the ALJ must evaluate every medical opinion received. *Id.* §§ 404.1527(c), 416.927(c). In general, the ALJ should give more weight to the opinion of an examining medical source than to the opinion of a non-examining source. *Id.* §§ 404.1527(c), 416.927(c)(1). Additionally, more weight is generally given to opinions of treating sources, who usually are most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability, than non-treating sources such as consultative examiners. *Id.* §§ 404.1527(c)(2), 416.927(c)(2). When the opinion of a treating source regarding the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" it is given controlling weight. *Id.* However, '[i]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996).

If the ALJ determines that a treating physician's opinion should not be considered controlling, the ALJ must then analyze and weigh all of the medical opinions in the record, taking into account the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist. *Johnson v. Barnhart*, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527). The weight afforded such opinions must be explained. S.S.R. 96-

2p, 1996 WL 374188, at *5 (July 2, 1996); S.S.R. 96-6p, 1996 WL 374180, at *1 (July 2, 1996).[2] An ALJ may not reject medical evidence for the wrong reason or no reason. *See Wireman v. Barnhart*, No. 2:05-CV-47, 2006 WL 2565246, at *8 (W.D. Va. Sept. 5, 2006). "In most cases, the ALJ's failure to consider a physician's opinion (particularly a treating physician) or to discuss the weight given to that opinion will require remand." *Love-Moore v. Colvin*, No. 7:12-CV-104-D, 2013 WL 5350870, at *2 (E.D.N.C. Sept. 24, 2013) (citations omitted).

Claimant contends the ALJ erred by failing to afford "great weight" to Dr. Jared Miller's treating medical source statement, and by not explaining why she gave "great weight to Dr. Miller's restriction on sitting for 15 minutes at a time" but only "little weight to most of the remainder of his opinion." Pl.'s Mem. [DE-20] at 24–26. The ALJ summarized and assessed Dr. Miller's opinion as follows:

> Dr. Jared Miller provided a treating medical source statement, dated March 10, 2015. He stated that claimant's concentration is interfered with constantly and that she has slight limitation in dealing with stress. He further stated that she can sit for 15 minutes at a time and then would need to stand or walk for less than 15 minutes and that she could sit for two hours in an eight-hour workday. He said that she can stand and walk less than 15 minutes at a time and then would need to sit or lie down for less than 15 minutes and that she could stand and walk for less than one hour in an eight-hour workday. He also stated that she does not need to be doing normal CNA duties at this time. He said that short-duration clerical or sedentary work was an option. He added that she should never lift. She does not need a cane. The Administrative Law Judge gives great weight to Dr. Miller's restriction on sitting for 15 minutes at a time. The undersigned gives little weight to most of the remainder of his opinions.

(R. 35). The ALJ is not required to discuss all the relevant factors listed in § 404.1527(c), but "must give good reasons for the weight assigned to a treating source's opinion." *Harrison v. Berryhill*, No. 4:16-CV-227-FL, 2017 WL 3669630, at *3 (E.D.N.C. Aug. 7, 2017) (citations and internal quotation marks omitted), *adopted by* 2017 WL 3669515 (Aug. 24, 2017).

---

[2] Rulings 96-2p and 96-6p were rescinded, effective March 27, 2017, and therefore still apply to this claim. 82 Fed. Reg. 15263-01 & 15263-02 (Mar. 27, 2017).

It is unclear from the decision which treatment records or what aspects of Claimant's longitudinal records conflict with Dr. Miller's opinion and it is not appropriate for the court to speculate as to the records actually relied upon by the ALJ. *See Fox v. Colvin*, 632 F. App'x 750, 755 (4th Cir. Dec. 17, 2015) (per curiam) ("[C]ircuit precedent makes clear that it's not our role to speculate as to how the ALJ applied the law to its findings or to hypothesize the ALJ's justifications that would perhaps find support in the record."). Accordingly, it is recommended that the case be remanded for the ALJ to sufficiently explain why it gave "little weight to most of the remainder" of Dr. Miller's opinion, guided by the factors articulated in *Johnson v. Barnhart*.

### C. The ALJ's RFC Determination

Claimant makes three arguments with respect to the RFC, namely (1) that it is incorrect, (2) that the ALJ failed to properly assess Claimant's symptoms and credibility in determining the RFC, and (3) the hypothetical question posed to the VE failed to accurate set forth all of Claimant's physical and mental limitations. Pl.'s Mem. [DE-20] at 7–8. The court will address each of these arguments in turn.

#### 1. The RFC

An individual's RFC is the capacity an individual possesses despite the limitations caused by physical or mental impairments. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also* S.S.R. 96-8p, 1996 WL 374184, at *1 (July 2, 1996). "[T]he residual functional capacity 'assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions' listed in the regulations." *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015) (quoting S.S.R. 96-8p). The RFC is based on all relevant medical and other evidence in the record and may include a claimant's own description of limitations arising from alleged symptoms. 20 C.F.R. §§

404.1545(a)(3), 416.945(a)(3); *see also* S.S.R. 96-8p, 1996 WL 374184, at *5. Where a claimant has numerous impairments, including non-severe impairments, the ALJ must consider their cumulative effect in making a disability determination. 42 U.S.C. § 423(d)(2)(B); *see Hines v. Brown*, 872 F.2d 56, 59 (4th Cir. 1989) ("[I]n determining whether an individual's impairments are of sufficient severity to prohibit basic work related activities, an ALJ must consider the combined effect of a claimant's impairments.") (citations omitted). The ALJ has sufficiently considered the combined effects of a claimant's impairments when each is separately discussed by the ALJ and the ALJ also discusses a claimant's complaints and activities. *Baldwin v. Barnhart*, 444 F. Supp. 2d 457, 465 (E.D.N.C. 2005) (citations omitted). The RFC assessment "must include a discussion of why reported symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical and other evidence." S.S.R. 96-8p, 1996 WL 374184, at *7. The RFC "assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." *Id.*; *see also Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000) (observing that the ALJ "must build an accurate and logical bridge from the evidence to his conclusion").

Claimant's primary argument with respect to the RFC is that she is incapable of performing light work. Namely, she points to the requirement that she must be able to sit for six hours in an eight-hour work day, and stand and walk for six hours in an eight-hour work day. Pl.'s Mem. [DE-20] at 27. As such, she contends that the medical evidence demonstrates that she cannot perform this work without being able to lay down to relieve her back pain. *Id.* She additionally contends that the severity of her pain interferes with attention and concentration constantly, which is not addressed by the ALJ in her RFC determination.

13

The scope of the court's review is determining whether substantial evidence supports the Commissioner's factual findings and whether the decision was reached through the application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). "In reviewing for substantial evidence, [the court should not] undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." *Mastro v. Apfel*, 270 F.3d 171, 176 (4th Cir. 2001) (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996), *superseded by regulation on other grounds*, 20 C.F.R. § 416.927(d)(2)). Rather, in conducting the "substantial evidence" inquiry, the court's review is limited to whether the ALJ analyzed the relevant evidence and sufficiently explained his or her findings in crediting the evidence. *Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439–40 (4th Cir. 1997).

Claimant asks the court only to reweigh the evidence and find that she is incapable of performing the RFC determined by the ALJ. She points to no legal error with regard to the RFC. The court finds that the ALJ's decision sufficiently discusses all of the relevant medical evidence, and appropriately explains how that evidence lends itself to the RFC. In specific contravention to what Claimant contends, the ALJ has fashioned an RFC to account for Claimant's back issues by limiting her light work to sitting for fifteen minutes at a time, up to two hours total in an eight-hour workday, and walking or standing for one hour at a time, up to six hours total in an eight-hour workday. (R. 29). Claimant's argument fails to address these limitations in the RFC. Accordingly, the ALJ's RFC determination is supported by substantial evidence and Claimant's argument is without merit.

2.  **Credibility**

When assessing a claimant's RFC, it is within the province of the ALJ to determine a

claimant's credibility. *See Shively v. Heckler*, 739 F.2d 987, 989–90 (4th Cir. 1984) ("Because he had the opportunity to observe the demeanor and to determine the credibility of the claimant, the ALJ's observations concerning these questions are to be given great weight.") (citation omitted). Federal regulations 20 C.F.R. § 404.1529(a) and § 416.929(a) provide the authoritative standard for the evaluation of subjective complaints of pain and symptomology, whereby "the determination of whether a person is disabled by pain or other symptoms is a two-step process." *Craig*, 76 F.3d at 593–94. First, the ALJ must objectively determine whether the claimant has medically documented impairments that could cause his or her alleged symptoms. S.S.R. 96-7p, 1996 WL 374186, at *2 (July 2, 1996); *Hines v. Barnhart*, 453 F.3d 559, 564 (4th Cir. 2006). If the ALJ makes his first determination, he must then evaluate "the intensity and persistence of the claimant's pain[,] and the extent to which it affects her ability to work," *Craig*, 76 F.3d at 595, and whether the claimant's statements are supported by the objective medical record. S.S.R. 96-7p, 1996 WL 374186, at *2; *Hines*, 453 F.3d at 564–65. Objective medical evidence may not capture the full extent of a claimant's symptoms, so where the objective medical evidence and subjective complaints are at odds, the ALJ should consider all factors "concerning the individual's functional limitations and restrictions due to pain and other symptoms." S.S.R. 96-7p, 1996 WL 374186, at *3 (showing the complete list of factors). The ALJ may not discredit a claimant solely because his or her subjective complaints are not supported by objective medical evidence. *See Craig*, 76 F.3d at 595–96. But neither is the ALJ required to accept the claimant's statements at face value; rather, the ALJ "must make a finding on the credibility of the individual's statements based on a consideration of the entire case record." S.S.R. 96-7p, 1996 WL 374186, at *2; *see Taylor v. Astrue*, No. 5:10-CV-263-FL, 2011 WL 1599679, at *4–8 (E.D.N.C. Mar. 23, 2011) (concluding the ALJ properly considered the entire case record to

determine that claimant's subjective complaints of pain were not entirely credible), *adopted by* 2011 WL 1599667 (Apr. 26, 2011).

Claimant contends that the ALJ's findings with regard to her credibility are not supported by substantial evidence. Specifically, Claimant argues she has a documented history of back issues, which cause great difficulty in sitting, standing, walking, lifting, carrying, pushing, pulling, standing, walking, focusing, and concentrating, as well as limit her functional ability to work on a sustained basis. Pl.'s Mem. [DE-20] at 28. She therefore argues that the ALJ's finding with respect to her credibility is not supported by substantial evidence. *Id.* The ALJ's decision summarized Claimant's subjective complaints of pain and her testimony regarding how that pain affects her daily life. (R. 30–31). The ALJ proceeded to discuss the objective medical evidence, and then concluded by stating the following with respect to Claimant's credibility:

> It is noted that the claimant received unemployment benefits in 2012 and 2013, indicating that she held herself forth as being able to work. She had a workers['] compensation claim pending, which was settled in 2013. Therefore, secondary gains may be an issue. Also, the claimant has been able to work five hours per day, five days per week. She is currently only caring for one patient but she was previously caring for two patients per day. Those other patients were not ambulatory and she had to do more strenuous activities at that time. It is noted that the claimant is able to drive daily. She manages her household. She is able to perform household chores with some assistance from her children.
>
> In addition, the medical evidence and observations by the Administrative Law Judge do not reveal any evidence of a change in motor tone or bulk such as disuse atrophy, or other change in body habitus or constitutional appearance such as weight loss, which might be expected in a person whose activities are markedly restricted due to a debilitating disease process. These factors indicate that the claimant's allegations of functional restrictions are only partially credible.

(R. 34).

Claimant does not point to any specific error by the ALJ, arguing only that, given the medical evidence and Claimant's testimony, the ALJ should not have stated that she finds

16

Claimant's functional restrictions "only partially credible." Claimant does not argue how this finding has affected the RFC, or what aspects of the RFC are attributable to that finding. Notwithstanding, the ALJ properly evaluated Claimant's subjective accounts of his pain and other symptoms with the objective medical evidence presented and did not err in finding that Claimant's statements were not entirely credible. Moreover, the RFC takes Claimant's subjective complaints into consideration with respect to limitations involving sitting for fifteen minutes at a time and for two hours total in an eight-hour workday. In short, the ALJ comported fully with the credibility evaluation prescribed by Social Security Ruling 96-7p by making findings, supported by reasons, with respect to Claimant's alleged symptoms, the medical record, and Claimant's own testimony. *See Mickles v. Shalala*, 29 F.3d 918, 929 (4th Cir. 1994) ("Subject only to the substantial evidence requirement, it is the province of the [ALJ], and not the courts, to make credibility determinations."). For the following reasons, Claimant's argument as to this issue is without merit.

### 3. VE Hypothetical

Claimant contends that the hypothetical question posed to the VE did not accurately set forth all of her physical and mental impairments and functional limitations, and therefore the ALJ committed reversible error. Pl.'s Mem. [DE-20] at 29. Claimant argues that, on cross-examination, the VE testified that a person would not be able to remain in competitive employment if: (1) the claimant would need to lay down anytime outside the normal 15 minute morning and afternoon break and the normal lunch hour; or (2) the claimant was absent from the workplace one and one-half to two days per month. *Id.* Because she argues that there is substantial evidence (namely, her testimony at the hearing and Dr. Miller's treating medical source statement) to support that those functional limitations exist, then their absence from the

17

ALJ's original hypothetical is error. *Id.*

The purpose of a VE is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform." *Walker v. Bowen*, 889 F.2d 47, 50 (4th Cir. 1989); *see also* 20 C.F.R. §§ 404.1566(e), 416.966(e). In order for a VE's opinion to be relevant or helpful, "it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments." *Id.* "Testimony elicited by hypothetical questions that do not relate with precision all of a claimant's impairments cannot constitute substantial evidence to support the Secretary's decision." *Pratt v. Sullivan*, 956 F.2d 830, 836 (8th Cir. 1992). The corollary to this rule is that the ALJ need only include in his questioning those impairments which the ALJ has found to be credible. *See Johnson*, 434 F.3d at 659 (holding a hypothetical valid because it adequately reflected claimant's characteristics as found by the ALJ). If the ALJ does not believe that a claimant suffers from one or more claimed impairments, and substantial evidence supports that conclusion, then the ALJ does not err if he fails to include those impairments in his questioning of the VE. *McPherson v. Astrue*, 605 F. Supp. 2d 744, 761 (S.D. W. Va. 2009) ("The ALJ is under no duty to present the VE with hypothetical questions that include [claimant's] claimed impairments if the ALJ has found those impairments to be not severe or not credible."); *Sobania v. Sec'y, Health & Human Servs.*, 879 F.2d 441 (8th Cir. 1989) (explaining "the hypothetical is sufficient if it sets forth the impairments which are accepted as true by the ALJ").

While Claimant contends that the ALJ should have included additional limitations in the hypothetical, the ALJ's determination that Claimant was restricted by only the limitations that are reflected in the hypothetical is supported by substantial evidence, as stated in the RFC discussion above. Accordingly, Claimant's argument as to this issue is without merit.

Notwithstanding the court's finding that no error occurred, it is necessary on remand for the ALJ to also reconsider the RFC determination, hypothetical posed to the VE, and Claimant's credibility with respect to her reevaluation of Dr. Miller's treating medical opinion, as discussed above.

**D.     Disability Determination**

Claimant contends that the ALJ erred by determining that she was not disabled, in contravention of her claim that she cannot perform substantial gainful employment on a regular and continuous basis. Pl.'s Mem. [DE-20] at 30. She argues that the objective medical evidence demonstrates that she has chronic medical conditions that have not improved over time, and thus, pursuant to the definition of "disability" under 42 U.S.C. § 423(d)(1), the ALJ's denial of her disability is not supported by substantial evidence. *Id.*

Claimant's final argument essentially encapsulates her previous five arguments in contending that the ALJ erred in finding her not disabled. The court will not engage in re-weighing the evidence, as stated in its discussions above. Accordingly, the court finds no merit in Claimant's final argument.

**VI. CONCLUSION**

For the reasons stated above, it is RECOMMENDED that Claimant's Motion for Judgment on the Pleadings [DE-19] be ALLOWED, Defendant's Motion for Judgment on the Pleadings [DE-21] be DENIED and the case be REMANDED to the Commissioner for further proceedings consistent with the Memorandum and Recommendation.

IT IS DIRECTED that a copy of this Memorandum and Recommendation be served on each of the parties or, if represented, their counsel. Each party shall have until **December 15, 2017** to file written objections to the Memorandum and Recommendation. The presiding district

judge must conduct his or her own review (that is, make a de novo determination) of those portions of the Memorandum and Recommendation to which objection is properly made and may accept, reject, or modify the determinations in the Memorandum and Recommendation; receive further evidence; or return the matter to the magistrate judge with instructions. *See, e.g.*, 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3); Local Civ. R. 1.1 (permitting modification of deadlines specified in local rules), 72.4(b), E.D.N.C. Any response to objections shall be filed within **14 days** of the filing of the objections.

**If a party does not file written objections to the Memorandum and Recommendation by the foregoing deadline, the party will be giving up the right to review of the Memorandum and Recommendation by the presiding district judge as described above, and the presiding district judge may enter an order or judgment based on the Memorandum and Recommendation without such review. In addition, the party's failure to file written objections by the foregoing deadline will bar the party from appealing to the Court of Appeals from an order or judgment of the presiding district judge based on the Memorandum and Recommendation.** *See Wright v. Collins*, **766 F.2d 841, 846-47 (4th Cir. 1985).**

Submitted, the _1_ day of December 2017.

_____
Robert B. Jones, Jr.
United States Magistrate Judge